Brown *v.* Balen.

---

## Edward G. Brown

### *v.*

### Peter Balen et al.

1. Where a bill alleged that a deed was given merely to secure a debt, and the answers admitted that the grantors made a certain deed in writing, of such date and of such purport and effect as in the bill mentioned and set forth—*Held,* not to be such an admission of the nature and effect of the deed as to preclude all inquiry on the subject.

2. Complainant held a mortgage on an undivided two-thirds interest in certain lands, to secure debts owing to him by the two holders of that interest. To induce the owner of the remaining third to join in an absolute conveyance of the premises to him, he agreed to personally assume two prior mortgages thereon.—*Held,* that he could not afterwards have such assumption expunged from his deed, on the ground of fraud or mistake, and have such deed declared to be a mere security for the payment of the debts of the two grantors.

Bill for relief. On final hearing on pleadings and proofs.

*Mr. F. Bergen,* for complainant.

*Mr. N. Runyon,* for defendants.

THE CHANCELLOR.

The bill is filed to reform a deed dated March 20th, 1877, given by Charles A. Hunter, William J. Leeds, and Martin M. Thorn, to the complainant, Edward G. Brown, for land in the city of Plainfield. The rectification sought is the expunging of the following clause:

"This conveyance is made subject to two mortgages now on said premises, one held by Peter Balen for seven thousand dollars, the other held by Charles Hyde for four thousand five hundred dollars, which, with the interest due thereon, the party of the second part is to assume and pay, as a part of the consideration money herein mentioned."

The deed expresses a consideration of $12,500. The ground stated in the bill for the relief sought, is, in brief, that the deed was in fact a mortgage, and made and taken only as such, to secure an existing indebtedness, and that the clause in question was inserted without the complainant's knowledge or consent, and by mistake of the scrivener, or fraud on the part of the grantors. The bill gives the following account of the giving of the deed: that at the time of the making of the deed, Leeds and Hunter were, and for a long time prior thereto had been, and at the filing of the bill still were, indebted to the complainant in the sum of $50,000, or thereabouts, which he had from time to time lent to them; that prior to the making of the deed, and after that indebtedness had accrued, it was agreed between him and them that they should give him such security for the indebtedness as they, or either of them, were able to give or furnish; that in pursuance of such agreement they gave him the deed in question, together with certain mortgages and other deeds for that purpose; that at the time or times of the delivery of those deeds, it was expressly agreed and stipulated between them

and him that the deeds, and each of them, and the property therein conveyed, and the mortgages, should be held by him as security for the payment of the money due to him as before mentioned, and in no other manner, and that upon the payment of the money the deeds should be void, and the property described in them reconveyed by him to the grantors or parties named by them, and the mortgages canceled. The bill further states, in the same connection, that at the time of the making and delivery of the deed in question the complainant held the bond of Leeds and Hunter, dated December 7th, 1875, for $15,000 and interest, secured by a mortgage on two undivided thirds of the land subsequently conveyed to him by the deed, which mortgage was never recorded ; that the bond and mortgage were never surrendered or delivered up, but are still held by him ; that they were given to secure part of the before-mentioned indebtedness, and that he was not satisfied with a mortgage upon two-thirds of the property, and demanded of them that they should give him security on the whole of the land, and, it is added, the conveyance in question was made in compliance with that demand. It is to be observed that one of the grantors, Thorn, who was the owner of an undivided third of the property, was not indebted to the complainant. The answers of the defendant deny expressly and explicitly that the clause sought to be expunged was inserted without the complainant's knowledge or consent, or by fraud or mistake.

At this stage, it will be convenient to dispose of a point made and insisted upon by the complainant, that inasmuch as the bill alleges that the deed was given for security, and the answers all admit that the grantors, Hunter, Leeds and Thorn, and their wives, " made and executed a certain deed, or instrument in writing, of such date and of such purport and effect, as in the complainant's bill is mentioned and set forth," this is an admission of the fact that the deed was made merely as and for a mortgage, and precludes all inquiry on the subject. But that position cannot be maintained. The bill sets forth the deed verbatim, and the admission under consideration is merely that the instrument was given, and without admitting or denying that

it was exactly as stated in the bill, conceding that it was indeed substantially so.

The proof is that the deed was taken as an absolute conveyance of the property. The testimony of the complainant on this point is subject to much criticism. He at first says that the proposition to convey to him came from Leeds and Hunter, who were moved to make the conveyance by the pecuniary difficulties they were in; that he never read the deed and did not think it worth recording. To the question "How did you happen to get that deed?" he answers:

"They wanted to give it to me; they were getting into some trouble with some debts that they owed, and they thought they had better give me a deed of it; I don't know that I ever read it over; Mr. Hunter might have read it to me; I don't remember his ever reading it, but still he might.have done so; I did not have it recorded, because I did not think it worth recording; I knew that other creditors of Leeds and Hunter were pressing them for money at the time the deed was given."

Now this is not only in contrariety to his subsequent admission in his testimony, that he found fault because the mortgage for $15,000 was not on the whole property, and they said they would give him a deed for the whole, but it is in direct conflict with the statement of the bill as to the origin of the deed. The bill says that he was not satisfied with a mortgage on two-thirds of the land, and demanded of Leeds and Hunter that they should give him security upon the whole of the land, and that the deed was made in compliance with that demand. In this connection it may be remarked that in his testimony he says he cared nothing for the fact that the mortgage was only on two-thirds of the property, and that he considered the mortgage as good as the deed, for there was, in his judgment, nothing in the property over the Balen and Hyde mortgages. But the letter written by him to Mr. Hyde, dated April 5th, 1877 (the deed was made in March of that year), is cogent and conclusive evidence as to the character of the conveyance, and is proof that he regarded it as a deed for the land to him as the purchaser thereof, and that under it he would be the absolute owner of the property. It is as follows:

"I have purchased from Messrs. Leeds and Hunter, and Martin M. Thorn, the property on Water street and Westervelt avenue, Plainfield, subject to two mortgages of $7,000 and $4,500, respectively, the latter held by yourself, and the accrued interest on the same, provided there are no other claims against the property. I have been very busy, but just as soon as I have the title examined and find it all right, I will see that the interest is satisfactorily adjusted.

The evidence shows that the complainant sought and obtained the conveyance as a deed absolute, and that he insisted upon having it because he could thus acquire the interest of Thorn in the ownership of the property. Hunter testifies that the complainant said to him that this property was the only one Leeds and Hunter had which was worth anything, and he wanted them to get him a deed for the whole of it; that Hunter told the complainant that they could not do that, that Thorn would not give up his interest. He also swears that in a subsequent conversation he told the complainant that if he, Brown, would assume the responsibility of the mortgages on the property (referring to the Balen and Hyde mortgages), he thought Thorn would give up his interest, and he adds, "Mr. Brown consented to that and said that he would take it and be responsible for the claims [meaning the two mortgages] on it, and pay up the interest right away." He says he saw Thorn on the subject, and, in view of the assumption, the latter consented to convey his interest to Brown. He further testifies that it was perfectly understood between the complainant and himself that the former's assumption of the mortgages was the consideration to be given to Thorn for giving up his interest in the property. He swears also that the complainant requested him and Leeds to get him a deed for the property, and adds, "not as security; he wanted the property absolutely." That the complainant agreed to assume the mortgages is positively sworn to by Hunter, who conducted the negotiation of the transaction for himself and Leeds. Thorn, as before stated, owed the complainant nothing. He did not see or communicate with him, except through Hunter, in the transaction. It is proved that the consideration of his conveyance of his interest in the property was the complainant's assumption of the Balen and Hyde mortgages, and that alone. As to him,

then, there is no pretence either of mistake or fraud, and as to Hunter and Leeds, the evidence establishes none. The complainant knew the contents of the deed when he accepted it. Hunter swears that the complainant read it in his presence, and after reading it, said that before he accepted it, he wanted to know whether Hyde's mortgage could stand, and when Hunter assured him that it could, he refused to take his word for it, but went out that day from New York to Plainfield, and saw Mr. Hyde on the subject. After seeing Hyde, he said he would take the property. The complainant, while he denies that he read the deed himself, admits that Hunter may have read it to him. The complainant has failed to establish his right to the relief which he seeks. The bill will be dismissed, with costs.